IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JOMO RASHAD BAILEY, | ) | C/A No. 4:07-3646-MBS-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| RICHARD BAZZLE, WARDEN, | ) | |
| PERRY CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Jomo Rashad Bailey ("petitioner/Bailey"), a *pro se* prisoner, seeks habeas relief

pursuant to 28 U.S.C. 2254. This matter is before the Court on the respondent's motion for summary

judgment (document # 13).[1]

Petitioner, Jomo Rashad Bailey, filed his habeas corpus petition on November 9, 2007.

Respondent filed a motion for summary judgment on January 14, 2008. The undersigned issued an

order filed January 15, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975),

advising the petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. The petitioner filed a response to the respondent's

motion for summary judgment on May 19, 2008.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC. Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

## I.  PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the petitioner. In fact, petitioner asserts in his response in opposition that he concedes to respondent's account of the procedural history. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

Petitioner is presently confined in the Perry Correctional Institution of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Spartanburg County Clerk of Court. The Spartanburg County Grand Jury indicted Petitioner at the August 2000 term of court for trafficking in cocaine (01-GS-42-2001). **App. pp. 188-89**. Jennifer Johnson, Esquire, represented him on this charge.

On March 26, 2002, he received a jury trial before the Honorable J. Derham Cole. The jury found him ,guilty as charged; and Judge Cole sentenced him to twenty-five years imprisonment. **App. pp. 5-131; 134**.

Petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Eleanor Duffy Ceary represented him on appeal. On April 28, 2003, Ms. Cleary filed a Final *Anders* Brief of Appellant₁ on Petitioner's behalf and petitioned to be relieved as counsel. The Final Brief presented only one issue for appellate review:

> Did the trial judge err by failing to suppress evidence of the cocaine seized from a bag without a search warrant and where none of the exceptions to the warrant were present?

**Final Brief of Appellant at p. 3**.

On June 17, 2003, Petitioner filed his own "Pro Se Brief in response. Petitioner likewise presented a Fourth Amendment challenge for the Court of Appeals' review:

2

> Did the trial judge err by failing to suppress evidence of the cocaine that was seized from a bag without unreliable, uncorroborated information from a tipster, and an invalid search warrant, or voluntary consent, and a three hour investigative detention was unreasonable under The Fourth Amendment?

**Final Brief of Appellant at p. 1**.

The South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's request to be relieved, in an unpublished Opinion filed on December 16, 2003. *State v.Bailey*, 2003-UP-729 (S.C. Ct. App., Dec. 16, 2003). It sent the Remittitur to the Spartanburg County Clerk of Court on January 16, 2004.

Petitioner filed a *pro se* Post-Conviction Relief (PCR) Application (04-CP-42-836) on March 11, 2004. He alleged the following grounds for relief in his Application:

> (I). Applicant contends his trial counsel was [ineffective] for fail[ing] to conduct a pre trial investigation, seek out potential witnesses who exited the [Greyhound] bus before Applicant and after Applicant, to question them about Applicant's arrest; [counsel also] failed to take pictures of the bus station to show the officers could not have seen Applicant exit the bus  with no black bag; [counsel] failed to interview the bus driver; and [counsel] failed to point out to the court that Investigator L.D. Smith's incident report said Applicant was not arrested with the drugs on his shoulder but ten (10) feet away from applicant.
>
> (II). Applicant contends he was denied Due Process of law in violation of his Fourteenth Amendment Federal Constitutional rights, when the State's witnesses (Investigator L.D. Smith and Sgt D. Barnwell) committed perjury by testifying they witnessed Applicant exit the Greyhound bus with a black bag and then arrested him with the same on his shoulder.

**App. pp.139-50**.  The State filed its Return on August 30, 2004. **App. pp. 151-55**.

The Honorable J. Mark Hayes, III, held an evidentiary hearing into the matter on June 23, 2005, at the Spartanburg County Courthouse. Petitioner was present at the hearing; and Frank L.

3

Eppes, Esquire, represented him. Assistant Attorney General Christopher Newton represented the State. Petitioner testified on his own behalf and he presented the testimony of trial counsel, Ms. Johnson. The State did not present any witnesses. **App. pp. 156-79**.

On July 14, 2005, Judge Hayes filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. The Order of Dismissal addressed Petitioner's claims that trial counsel was ineffective because (1) counsel had only met with his trial counsel the day before his trial; (2) counsel should have gotten other witnesses, specifically other bus passengers and the driver; (3) counsel should have brought out that the incident report stated that he had been arrested away from the scene (the box was checked for that indicator); and trial counsel did not introduce the drawing of the scene. **App. pp. 181-86**.

A timely notice of appeal was served and filed. Deputy Chief Attorney Wanda H. Carter represented him in collateral appellate proceedings. On May 22, 2006, Mrs. Carter filed a *Johnson* Petition for Writ of Certiorari₃ on Petitioner's behalf and petitioned to be relieved as counsel. The only Question Presented in the *Johnson* Petition was stated as follows:

> Trial counsel rendered ineffective legal assistance because [s]he lacked sufficient time to prepare petitioner's case prior to trial.

***Johnson* Petition at p. 2**.

Petitioner filed "Petitioner's Response to Johnson Petition" on July 10, 2006, wherein he raised the following clam:

> Petitioner was denied due process of law and effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the federal Constitution.

***Pro Se* Response at p. 1**. His argument then lists seven points:

4

1.      Petitioner did not exit the Greyhound bus with any black bag;

2.      The police officers could not have seen Petitioner exit the bus, as they testified they did, because of their position they were parked in and how the bus station is built;

3.      The witnesses who exited the bus before me & after me, along with the bus driver, would have testified, Petitioner didn't exit the bus with any bags;

4.      The warrant for arrest was based on a Family Court failure to pay child support, which was illegally obtained because Petitioner was not supposed to be paying child [support] in the first place;

5.      Trial counsel would have further notice the States documents of arrest said Petitioner was arrested away from the crime scene;

6.      Trial counsel should have gotten the investigator to go to the bus station and take[] pictures of it to be introduced in Court;

7.      Trial counsel should have gotten the investigator to speak with all the passengers & the bus driver.

***Pro Se* Response at p. 1**. Petitioner then argued that these points support his claim that counsel did not adequately investigate and prepare his case. ***Pro Se* Response at pp. 2-3**.

The South Carolina Court of Appeals filed an Order on August 30, 2007, in which it denied certiorari and granted counsel's petition to be relieved. It sent the Remittitur to the Spartanburg County Clerk of Court on September 17, 2007.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, petitioner raises the following grounds:

**GROUND ONE:**           The trial court erred by failing to suppress cocaine evidence seized from a bag without a search warrant and where none of the exceptions to the warrant requirement were present.

5

**SUPPORTING FACTS:**    On August 3, 2000, a bench warrant was issued against Petitioner from Family Court for failing to pay child support. On October 8, 2000, Spartanburg Police Officer arrested Petitioner on this warrant. In addition to the bench warrant, the officer said they had information from an anonymous tipster that Petitioner had drugs in his posession. Thus, subsequent to his arrest the officers searched him and under the pretext of a search incident to the arrest, tore open a cereal box in his bag to find cocaine.

**GROUND TWO**:    Petitioner was denied the right to effective assistant of trial counsel by Counsel's failure to conduct pretrial investigation.

**SUPPORTING FACTS**:    Trial counsel failed to question witnesses at the bus station where Petitioner was arrested; Counsel failed to take pictures of the bus station to show that officers could not have seen him exist the bus with the bag in which drugs was found; Counsel failed to introduce Investigator L.D. Smith's Incident Report, which showed Petitioner was not arrested with the bag in which the drugs were found.

**GROUND THREE**:    Petitioner was denied due process of law by the Prosecution's introduction of perjured testimony.

**SUPPORTING FACTS**:    The prosecution introduced perjured testimony by police officer who testified they saw Petitioner exist a Grey Hound Bus with the black bag in which drugs was found when in fact it was impossible for the officer to have seen Petitioner existing the bus from where the officers were parked.

(Petition).

## III.  SUMMARY JUDGMENT

On January 14, 2008, the respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential

elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.


## IV.  STANDARD OF REVIEW

Since Bailey filed his petition after the effective date of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as

amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998);

Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--(1) resulted
> in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that
> was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state

court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st  Cir. 1998) ("the

AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas

proceeding by specifically directing the habeas court to make the state court decision the cynosure

of federal review.").  Further, the facts determined by the state court to which this standard is applied

are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence.  28

U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams

v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of

federal law, this court must separately analyze the "contrary to" and "unreasonable application"

phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

## V.   DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)     An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)     A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of

judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

Respondent asserts that he "[s]ees no exhaustion issue." (Memorandum p. 5).

<u>2.Procedural bypass</u>

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a

11

second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4.  Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show

actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In the case of Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

Respondent asserts that even though some ground(s) are not exhausted, the exhaustion requirement is technically satisfied.

## VI.  ANALYSIS

As previously stated, petitioner raised the following as ground one in his habeas petition:

**GROUND ONE:**     The trial court erred by failing to suppress cocaine evidence seized from a bag without a search warrant and where none of the exceptions to the warrant requirement were present.

**SUPPORTING FACTS:**     On August 3, 2000, a bench warrant was issued against petitioner from Family Court for failing to pay child support. On October 8, 2000, Spartanburg Police officer arrested petitioner on this warrant. In addition to the bench warrant, the officer said they had information from an anonymous tipster that Petitioner had drugs in his possession. Thus, subsequent to his arrest the officers searched him and under the pretext

of a search incident to the arrest, tore open a cereal
box in his bag to find cocaine.

(Petition).

Respondent asserts that petitioner raised this allegation on direct appeal. Respondent argues

that habeas corpus relief is not available for Fourth Amendment claims alleging that a conviction

rests on evidence obtained through an unconstitutional arrest, search or seizure, where the prisoner

had a full and fair opportunity to litigate the Fourth Amendment claim in state court.

In his response in opposition, petitioner argues that he has not had fair presentation of his

Fourth Amendment claim because counsel filed a non-merit *Anders* brief on appeal which only

allowed him the opportunity to file and raise the issue pro-se.

It is recommended that summary judgment be granted on this issue. Petitioner argued on

direct appeal that evidence used in his trial was the product of an illegal arrest. The appeal was

dismissed by the South Carolina Court of Appeals. A federal court will not grant habeas relief based

on a Fourth Amendment violation if "the State has provided an opportunity for full and fair

litigation" of the claim. Stone v. Powell, 428 U.S. 465, 482 (1976).


## GROUND TWO

Petitioner asserts the following as ground two in his habeas petition:

**GROUND TWO**:          Petitioner was denied the right to effective assistant of
                         trial counsel by Counsel's failure to conduct pretrial
                         investigation.

**SUPPORTING FACTS**:    Trial counsel failed to question witnesses at the bus
                         station where petitioner was arrested; Counsel failed
                         to take pictures of the bus station to show that officers
                         could not have seen him exist [sic] the bus with the

15

bag in which drugs was found; Counsel failed to introduce Investigator L.D. Smith's Incident Report, which showed petitioner was not arrested with the bag in which the drugs were found.

(Petition).

Respondent does not contest that ground two is exhausted. Further, respondent argues that petitioner is not entitled to relief as the state courts' rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of clearly established United States Supreme Court precedent.

In this ground two, petitioner is asserting ineffective assistance of counsel for three reasons: that counsel failed to question witnesses at the bus station where he was arrested, failed to take pictures of the bus station to show that officers could not have seen him exit the bus with the bag in which the drugs were found, and that counsel failed to introduce L.D. Smith's incident report that allegedly showed petitioner was not arrested with the bag in which the drugs were found.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

16

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

17

In <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." <u>See</u> <u>Williams v. Taylor</u>, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting <u>Lockhart</u>, at 369-70).

A review of the transcript from the PCR hearing reveals that petitioner testified that the day he got arrested he had gotten off the bus along with six other people and "there was a bag sitting in the chair." (Tr. 159). Petitioner testified that when he went to use the pay phone, Narcotics came and told him that there was a warrant for him for child support and asked him where was his bag. Petitioner testified that he told them he did not have a bag but they found the bag in the chair and opened it wherein they "found the dope." (Tr. 159). Petitioner testified at the PCR hearing that the officers told him that they had a tip that he was coming in with drugs from New York. Petitioner testified that he had never seen the bag before, that they did not have any evidence of his fingerprints on the bag, and that he was arrested on a family court warrant. Petitioner admitted in his testimony at PCR that there was an outstanding warrant for his arrest because he had been paying the child support directly instead of through the court system but testified that he was basically railroaded.

Petitioner further testified that Jennifer Johnson represented him at trial but that he only met with her the day before trial. Petitioner admitted that counsel told him that he could testify but did not have to do so. Petitioner testified at the PCR hearing that he did not see any need in testifying at trial. Petitioner testified that there was no way the officers could have seen him get of the bus as

18

they testified at trial. PCR counsel showed plaintiff a copy of a diagram that was drawn for the case at trial which he testified accurately depicted the bus station. Petitioner testified that counsel did not make any effort to find the other six passengers that got off of the bus with him that day. Petitioner testified that "[W]ell, if Ms. Johnson would have interviewed the bus driver and interviewed all six witnesses. And if she really have the time to do it, because like I said, she didn't really have but twenty-four hours to do it, I think that I would have got acquitted of these charges." (Tr. 166). Petitioner did not put up any witnesses to testify at the PCR hearing. Petitioner admitted that he told the trial judge when questioned that: he did not have any witnesses for his attorney, Ms. Johnson, to call at trial; that he did not have any other evidence for his attorney to introduce; that his attorney, Ms. Johnson, had done everything he wanted her to do; that she had not failed to do anything he wanted her to do; and, that he was satisfied with her representation. (Tr. 168). Further, petitioner testified at PCR that he recalled the trial judge asked him a series of questions discussing his right to testify. Additionally, petitioner admitted at PCR that he told the trial judge during sentencing that he was sorry, that the drugs were not his but that he was going to get them for somebody.

Jennifer Johnson, Esquire, testified that she was appointed as public defender to represent petitioner and had sent petitioner a letter on March 14, advising him to contact her immediately so that they could discuss his case. However, Ms. Johnson testified that he did not contact her and the letter was not returned. Ms. Johnson testified that she did not have a phone number in her file so she contacted the solicitor who did have a number provided by the bondsman, but, after trying several times to contact petitioner at that number, she was unsuccessful. Therefore, counsel testified that she did not actually meet with him until he came in for roll call, the day before the trial. (Tr. 171).

19

Ms. Johnson testified that petitioner "indicated to me that basically he was bringing the drugs back from New York for his brother. That he would [be] interested in working with the police if he could get a better deal. And I told him I would check into that. But I also at the time I released him on that Monday, told him to stay close by the phone in case we needed to get in touch with him about anything." (Tr. 172-173). Ms. Johnson testified that she does not recall petitioner discussing with her anybody from the bus as a possible witness or that there were any problems with the warrant issued by the family court. Ms. Johnson further testified at PCR that she made the point during trial that there were no fingerprints found on the bag in question. Ms. Johnson testified that she elicited from the officers' testimony regarding where they were parked in relation to the bus and made the point in closing that the officers could not have seen petitioner from the vantage point that they described in their surveillance. Additionally, Ms. Johnson testified that she did not notice on the police report that the officer wrote down that petitioner was arrested away from the crime scene and, had she noticed, she could have questioned the officers about that. (Tr. 174). When questioned if the fact that petitioner was taken into custody and searched without a family court warrant would have materially affected the outcome of the case, Ms. Johnson asserted that the officers testified that they stopped petitioner based on a tip, asked for consent to search the bag, and that consent was given for the search.

A review of the PCR judge's order reveals he found the following:

> This Court does not find the Applicant's testimony to be credible on the issues in this case. Trial counsel's testimony is found credible. This Court finds that trial counsel did attempt to contact the Applicant prior to trial, but was unable to do so through no fault of her own. Although this Court notes that it may have been better practice to request a continuance in such a situation, it does not amount to deficient performance in this case. The Applicant admitted

20

that he had a bench warrant from family court. The bench warrant was sufficient to arrest him, even if based on "railroading" as the Applicant claims, because the police were within their authority in relying on the warrant. Further, counsel did attempt to suppress the drugs discovered in the bag, but her motion was denied. Further, if the Applicant is to be believed, the bag was not his, and thus he would have no real standing to challenge it, as he had no reasonable expectation of privacy relating to the bag. Trial counsel did cross-examine the police on their ability to see the Applicant and the bus and the lack of physical evidence linking the Applicant to the bag. The Applicant told the trial court that he had no additional witnesses that he wanted to [be] present. The Applicant admitted as well that he was involved in the drugs, to both his trial counsel and the trial court during sentencing.

Given the above findings, the Applicant has failed to carry his burden of proof. Trial counsel's performance did not fall below reasonable professional standards. Furthermore, the Applicant suffered no prejudice. The police had a facially valid bench warrant for the Applicant. They testified that the Applicant had the bag with him. The trial court found the drugs admissible. None of the witnesses the Applicant claims could have aided his case testified in the post-conviction relief hearing, nor was their alleged testimony submitted in accordance within the rules of evidence. See Bannister v. State, 333 S.C. 298, 509 S.E.2d 807 (1998). There is not reasonable probability in such a case that the result of the proceedings would have been different but for any alleged errors of trial counsel.

(Tr. 184-185).

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. §2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in Strickland, 466 U.S. 668, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. See Hoots v. Allsbrook, 785 f.2d 1214, 1219 & n. 6 (4th Cir. 1986) ("old" § 22254(d) standard) and Williams, supra.

21

The undersigned has reviewed the record and concludes that respondent's motion for summary judgment should be granted on this issue. The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that her representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Petitioner did not submit any photographs or witnesses at the PCR hearing. Additionally, petitioner admitted to counsel and to the trial judge at the time of sentencing that he was involved with the drugs even if they, allegedly, were not directly for his use.[2] As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra.  Thus, the undersigned recommends that the respondent's motion for summary judgment be granted on this issue.

## **GROUND THREE**

Petitioner raised the following as ground three in his habeas petition:

---

[2] It is noted in petitioner's habeas allegation under the supporting facts in ground one that petitioner states "thus, subsequent to his arrest the officers searched him and under the pretext of a search incident to the arrest, tore open a cereal box in *his* bag to find cocaine." See petition, p.6.

**GROUND THREE**:     Petitioner was denied due process of law by the Prosecution's introduction of perjured testimony.

**SUPPORTING FACTS**:     The prosecution introduced perjured testimony by police officer who testified they saw petitioner exist[sic] a Grey Hound Bus with the black bag in which drugs was found when in fact it was impossible for the officer to have seen petitioner existing[sic] the bus from where the officers were parked.

(Petition).

Respondent argues that this issue is procedurally defaulted in that he failed to present this allegation to the state court of appeals on writ of certiorari, and even if petitioner had submitted this issue in his petition for writ of certiorari, the state court of appeals would not have considered it on the merits since he did not obtain a ruling on this allegation from the PCR judge.

In reviewing petitioner's "response to Johnson petition" filed by petitioner on his appeal from PCR, petition raised the following claim, quoted in part: "Petitioner was denied due process of law and effective assistance of counsel." Thus, even if it was found that petitioner did raise this issue in his PCR appeal, this issue is still barred from federal review in that the issue was procedurally defaulted in state court under Coleman, supra, because it was not ruled upon by the PCR judge and the petitioner did not obtain a ruling via a Rule 59(e) motion. Further, the petitioner has not shown sufficient cause and prejudice to excuse the default.[3]   In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural

---

[3] In his response in opposition, petitioner argues that he can show cause and prejudice to overcome any default because counsel failed to send him a copy of the PCR order in a timely manner which prejudiced him from making a motion to alter or amend judgment. Thus, petitioner is asserting ineffective assistance of PCR counsel or error on the part of PCR counsel to show cause. However, ineffective assistance on collateral review is not cause. Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999). As petitioner has no right to assistance of counsel in state habeas proceedings, a lack of such assistance is insufficient to establish cause. Id.

23

rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, to the extent that this claim is based upon a due process violation, it is procedurally barred from consideration by this Court and should be dismissed. Id.; *see* 28 U.S.C. 2254; Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir.1990), *cert. denied,* 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]; Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) [In order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.]; Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing *Murray v. Carrier,* 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla.1995). Therefore, it is recommended that the respondent's motion for summary judgment be granted as to Grounds 3.

## VII.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondent's motion for summary judgment (document #13) be GRANTED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 28, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**